**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARK ANTOINE WEST,<br><br>*Defendant*. | Criminal Action No. 26-00047 (AHA) |

**<u>Memorandum Opinion and Order</u>**

Mark Antoine West moves to suppress a gun and ammunition that officers obtained after stopping and arresting him at a restaurant, arguing that the officers' actions violated the Fourth Amendment. After considering the evidence, including live testimony at the suppression hearing, the court concludes the government has shown the stop and arrest were justified under applicable standards, and therefore denies the motion to suppress.

## I.   Background[1]

In February 2026, West was at a restaurant, attending his friend's gender reveal party. *See* Draft Hr'g Tr. at 8–9, 33 (July 16, 2026). At some point, West got into a verbal spat with another person at the restaurant. *See* Gov't Ex. 1 at 0:16–1:13. The dispute was sufficiently aggressive that the restaurant manager called 911 to say, "there is about to be a fight." *Id.* at 0:35–0:40. And a few minutes later, a restaurant patron also called 911 saying that a man was "going to fight all the girls" and "kept harassing" her friend. Gov't Ex. 3 at 0:15–0:26, 2:45–3:18. In response, a Metropolitan Police Department dispatcher radioed about "a simple assault" at the restaurant, with a tone that

---

[1]   The facts described reflect the court's findings based on the testimony and evidence presented at the court's suppression hearing and with accompanying briefing.

indicated the highest priority for law enforcement assistance. Gov't Ex. 5 at 1:33–1:42; Draft Hr'g Tr. at 17, 19–20. The dispatcher described one of the men as wearing a yellow and black jacket— what West was wearing. Gov't Ex. 5 at 1:49–2:00; *see* Draft Hr'g Tr. at 29–30.

Four U.S. Secret Service officers monitoring the radio channel responded to the restaurant within minutes. *See* Def. Ex. 3 at 19:33:54–19:34:04; Draft Hr'g Tr. at 17–22. When they arrived, the restaurant manager told the officers, "I got someone that I want you to get out" and pointed at West. Draft Hr'g Tr. at 23–24, 28. The manager also told one of the officers that the person was being aggressive and disruptive. *Id.* at 25.

The four officers then approached West, who was wearing a black and yellow jacket as had been described by the dispatcher. Def. Ex. 3 at 19:33:54–19:34:04; *see* Draft Hr'g Tr. at 29– 30. Officer Moises Castillo-Vasquez, who testified at the court's evidentiary hearing, approached West first. *See* Def. Ex. 3 at 19:33:54–19:34:02. He told West: "Hey, you got to go, and the manager wants you out," gesturing toward the exit. Draft Hr'g Tr. at 30; Gov't Ex. 9 at 19:33:59– 19:34:04. West responded that he was not leaving, indicating that he was there for a party. Draft Hr'g Tr. at 31, 59–60, 93; *see* Gov't Ex. 9 at 19:34:02–19:34:04. Officer Castillo-Vasquez then held West by the arm and reached behind West to guide him out of the restaurant. Gov't Ex. 9 at 19:34:02–19:34:08; Draft Hr'g Tr. at 31–32. Officer Castillo-Vasquez again told West, "You got to go." Draft Hr'g Tr. at 32. West then yanked his arm away from Officer Castillo-Vasquez. Gov't Ex. 9 at 19:34:07–19:34:12.

At this point, a friend stepped between West and the officers and began to speak to them. *Id.* at 19:34:09–19:34:25. As the friend was trying to intervene, Officer Castillo-Vasquez saw West turn his body away from the officers and believed West may be reaching into his jacket. Draft Hr'g Tr. at 34–35; *see* Gov't Ex. 9 at 19:34:12–19:34:21. Concerned that West might be reaching for a

weapon, Officer Castillo-Vasquez said, "He's reaching, he's reaching" to the other officers. Draft Hr'g Tr. at 34–35. West then further turned his body away from the officers. *Id.* at 37–38; Gov't Ex. 9 at 19:34:22–19:34:25.

At that point, one of the officers tackled West to the ground. Gov't Ex. 9 at 19:34:25–19:34:31. As West was on the floor, he put his hands underneath him, making it hard for the officers to get control of his hands. Draft Hr'g Tr. at 40–41. After West did not comply with commands to get his hands out, the officers used a taser to stun West and handcuffed him. *Id.* at 42–43. When the officers lifted West to his feet, there was a gun on the floor where West had been laying, which West attempted to kick away. Gov't Ex. 9 at 19:35:30–19:36:09; Gov't Ex. 10 at 19:35:30–19:36:09; Draft Hr'g Tr. at 44.

The government charged West with unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). ECF No. 9. West now moves to suppress the gun and ammunition as fruits of an unlawful stop and arrest. ECF No. 34. After the parties briefed the issues, the court held a suppression hearing, at which Officer Castillo-Vasquez testified.

## II.    Discussion

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (cleaned up). "If the government oversteps that constitutional boundary, the remedy is generally exclusion—courts must suppress the unlawfully obtained evidence and any derivative evidence tainted by the violation unless an exception applies." *United States v. Green*, 149 F.4th 733, 743 (D.C. Cir. 2025).

3

West argues, first, that Officer Castillo-Vasquez unreasonably stopped him by holding his arm and pushing him toward the exit and, second, the officers lacked probable cause to arrest him, which caused the gun to come out on the floor. ECF No. 43 at 11–21. The court addresses each issue in turn.

### A. Officer Castillo-Vasquez Had Reasonable Suspicion To Support The Brief Stop That Came Before The Arrest

The parties agree that Officer Castillo-Vasquez conducted a seizure when he held West's arm and put his hand on West's back. ECF No. 39 at 11 n.25; ECF No. 43 at 11 n.2; *see Torres v. Madrid*, 592 U.S. 306, 317 (2021) (explaining that "a mere touch can be enough for a seizure"). And they agree the officers had reasonable suspicion to support a brief investigatory stop, based on the assault dispatch that matched West's description. *See* ECF No. 39 at 9–12; Draft Hr'g Tr. at 101 (West conceding that the assault dispatch "certainly gives reasonable suspicion to go and investigate the assault"); ECF No. 43 at 11. But West argues that the seizure exceeded the scope of an investigatory stop when Officer Castillo-Vasquez applied force to West's back to guide him out of the area. ECF No. 43 at 11–16. According to West, because Officer Castillo-Vasquez did not take appropriate steps to investigate upon stopping West, the stop should be treated as an arrest. *Id.* The court disagrees.

"[A]n officer may briefly detain a citizen if he has a reasonable, articulable suspicion that 'criminal activity may be afoot.'" *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). But "[f]or purposes of the Fourth Amendment, a stop that is unduly prolonged or intrusive transforms from an investigative stop into an arrest requiring probable cause." *Hall v. District of Columbia*, 867 F.3d 138, 153 (D.C. Cir. 2017). "The point at which an investigative stop becomes an arrest is not marked with a bright line." *Id.* "Rather, the Court has 'emphasized the need to consider the law enforcement purposes to be served by the

4

stop as well as the time reasonably needed to effectuate those purposes.'" *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985)). To determine whether the officers conducted a stop or an arrest, the court may consider "the officer's intent in stopping the citizen; the impression conveyed to the citizen as to whether he was in custody or only briefly detained for questioning; the length of the stop; the questions, if any, asked; and the extent of the search, if any, made." *United States v. White*, 648 F.2d 29, 34 (D.C. Cir. 1981) (citations omitted). Physical contact alone does not convert an investigatory stop into an arrest. *See United States v. Leake*, No. 19-cr-194, 2020 WL 3489523, at *10 (D.D.C. June 26, 2020) (collecting cases).

To begin with, the court agrees with the parties that Officer Castillo-Vasquez had reasonable suspicion to conduct an investigatory stop. The court credits Officer Castillo-Vasquez's testimony that, upon arriving at the restaurant, the restaurant manager identified West as someone he wanted out of the restaurant. *See* Draft Hr'g Tr. at 23–24, 28. The court also credits Officer Castillo-Vasquez's testimony that when he approached West and told him he had to leave, West refused. *See id.* at 30–31. By the time Officer Castillo-Vasquez stopped West by holding West's arm and putting his hand on West's back, he therefore had reasonable suspicion that West had been involved in an assault, as West acknowledges, and that West was engaged in unlawful entry. *See* D.C. Code § 22-3302(a)(1) (providing that "[a]ny person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor").

The court disagrees with West's argument that Officer Castillo-Vasquez's conduct exceeded the scope of a lawful investigatory stop. The court credits Officer Castillo-Vasquez's testimony that, after West refused his first direction to leave, Officer Castillo-Vasquez held West's arm and calmly told West again that he had to leave. *See* Draft Hr'g Tr. at 31–32. Nothing about that interaction exceeds the scope of a lawful investigatory stop—to the contrary, it was directly tied to assessing whether West would leave voluntarily or would continue to refuse to do so. *See United States v. Jones*, 1992 WL 76918, at *2 (D.C. Cir. 1992) (concluding that officers conducted only a stop, and not an arrest, when they grabbed the defendant and led him to the patrol car for questioning). Officer Castillo-Vasquez's physical contact with West was brief, lasting less than thirty seconds. Gov't Ex. 9 at 19:34:04–19:34:25. And although Officer Castillo-Vasquez used physical contact in holding West's arm and applying pressure to his back to guide him away, this does not rise to the level that converts a brief stop into an arrest. *See Leake*, 2020 WL 3489523, at *10 (concluding that the officer's "act of grabbing [the defendant's] arm was not unduly intrusive such that it became an arrest").

## B.  The Officers Had Probable Cause to Arrest West

The parties agree that when officers tackled West to the ground, it amounted to an arrest under the Fourth Amendment. *See* ECF No. 30 at 18; ECF No. 43 at 14. West argues the arrest was unlawful, but the court again disagrees. *See* ECF No. 43 at 16–21.

"A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 56–57 (cleaned up). "There is no precise formula for the probability required for probable cause." *United*

6

*States v. Vinton*, 594 F.3d 14, 21 (D.C. Cir. 2010) (citation omitted). "Somewhere between less than evidence which would justify conviction and more than bare suspicion, probable cause is satisfied." *Id.* (cleaned up). "The standard is to be met by applying a totality-of-the-circumstances analysis." *Id.* (citation omitted).

Here, the officers had probable cause to believe West was committing unlawful entry by the time they arrested him. A person commits unlawful entry when "an individual with lawful authority over the property" asks them to leave the property and they refuse. *Hinton v. United States*, 351 A.3d 597, 600 (D.C. 2026); *see* D.C. Code § 22-3302(a)(1). As noted, by the time the officers approached West, the restaurant manager had indicated to them that he wanted West to leave the restaurant, following a dispatch for an assault involving an individual that matched West's description. Draft Hr'g Tr. at 17, 20, 23–24, 28–30; Gov't Ex. 5 at 1:36–2:00. And the court credits Officer Castillo-Vasquez's testimony that when he stopped West, he said: "Hey, you got to go, and the manager wants you out," pointing toward the exit. Draft Hr'g Tr. at 30; Gov't Ex. 9 at 19:33:59–19:34:04. West refused, saying he wasn't leaving and indicating he was there for a party. Draft Hr'g Tr. at 31, 59–60, 93; *see* Gov't Ex. 9 at 19:34:02–19:34:04. As Officer Castillo-Vasquez reached behind West's back to guide him out of the restaurant, he again told West, "You got to go." Draft Hr'g Tr. at 32. West then yanked his arm away and, after his friend intervened, turned his body away from the officers. Gov't Ex. 9 at 19:34:08–19:34:25; Draft Hr'g Tr. at 33–35, 37–38. At this point, based on the totality of facts, the officers could reasonably believe West was refusing to leave the restaurant even though they had directly communicated the manager's desire for him to leave—indeed, that's precisely what West was doing. They therefore had probable cause to arrest West for unlawful entry.

West argues that the government did not have probable cause that he committed unlawful entry for two reasons. First, he says the officers—not the general manager of the restaurant—asked him to leave, so his refusal to do so was not on the demand of someone "lawfully in charge" of the restaurant. ECF No. 43 at 16. But the officers did not communicate some general desire for West to leave—Officer Castillo-Vasquez specifically told him that the restaurant manager wanted him out of there. And D.C. courts have "consistently held that an individual with [lawful] authority 'may act through an agent in ordering someone to leave' and that the agent can be a police officer." *Hinton*, 351 A.3d at 606 (quoting *Darab v. United States*, 623 A.2d 127, 135 n.22 (D.C. 1993)). Second, West argues that even if the officers could tell him to leave on behalf of the manager, they told him to come upstairs with them and not to leave the restaurant. *See* ECF No. 43 at 16. But "[a]lthough the statute requires a 'demand' before a person may be held liable for refusing to quit another's premises, such demand need not take any particular form, as long as a reasonable person would understand that he was required to leave." *McGovern v. George Washington Univ.*, 245 F. Supp. 3d 167, 186 (D.D.C. 2017), *aff'd sub nom. McGovern v. Brown*, 891 F.3d 402 (D.C. Cir. 2018) (rejecting the plaintiff's argument that officer saying "Sir, can you please come with me" was not a directive to leave the premises). And, in any event, the court credits Officer Castillo-Vasquez's testimony that he told West that the manager wanted him out of the restaurant, even if his main goal was to get West to a less crowded place where there were no kids around. *See* Draft Hr'g Tr. at 30–31. The officers therefore had probable cause to arrest West for unlawful entry when he refused to do so.

## III.    Conclusion

For these reasons, the government has shown it was justified in stopping and arresting West under applicable standards, and the court denies West's motion to suppress tangible evidence, ECF No. 34.

9

_____
AMIR H. ALI
United States District Judge

Date:   July 22, 2026